IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARLETA MARIE MOLES,                    )    Civil No.: 3:15-cv-02143-JE
                                       )
              Plaintiff,               )    OPINION AND ORDER
       v.                              )
                                       )
NANCY A. BERRYHILL,[1]                 )
Acting Commissioner of Social Security,)
                                       )
              Defendant.               )
_____)

Arleta Marie Moles,

              Pro Se Plaintiff,

       v.

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Ryan Lu
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

              Attorneys for Defendant

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 20, 2017, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. Pro. 25(d).

JELDERKS, Magistrate Judge:

Arleta M. Moles ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). For the reasons that follow, the Commissioner's decision is affirmed.

## Procedural Background

Plaintiff filed her applications for DIB and SSI on December 13, 2011, alleging disability beginning September 27, 2010. Tr. 23, 69, 70. After Plaintiff's claim was denied initially and on reconsideration, a hearing was convened on November 14, 2013, before Administrative Law Judge ("ALJ") David DeLaittre. Tr. 46-68. The ALJ issued a decision on April 23, 2014, finding Plaintiff not disabled. Tr. 23-37. The decision became the final decision of the Commissioner on September 25, 2015, when the Appeals Council denied Plaintiff's request for review. Tr. 1-4. Plaintiff now appeals to this court for review of the Commissioner's final decision.

## Background

Born April 20, 1963, Plaintiff was 47 years old on the alleged onset date. Tr. 70. Plaintiff is a high school graduate and attended two years of college. Tr. 260. She has past relevant work as a sales associate, customer service clerk, flagger, fast food cook, waitress, and small products assembler. Tr. 35. Plaintiff alleges disability due to fracture of the tibia, right knee impairment, hip pain, osteoporosis, myofascial pain syndrome, neuropathy, and ulnar nerve pain in the right elbow. Tr. 259.

## **Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential inquiry is summarized below, as described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under step two. 20 C.F.R. §§ 404.1520(b), 406.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under step three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under step four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If

the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to perform. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE"), or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At steps one through four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

## The ALJ's Decision

At the first step of the disability analysis, the ALJ found Plaintiff met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since the alleged onset date, September 17, 2010. Tr. 25.

At the second step, the ALJ found Plaintiff had the following severe impairments: meniscus tear, status post-arthroscopy; degenerative disc disease of the cervical spine; right elbow injury with resulting mild nerve damage; and myofascial pain syndrome. Tr. 26. The ALJ additionally noted that Plaintiff's medically determinable anxiety disorder and depression did not cause more than a slight limitation on her ability to perform basic work activities. Id.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 28.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity to:

> [P]erform less than the full range of light work . . . [she] can lift and/or carry twenty pounds occasionally and ten pounds frequently. The claimant can stand and/or walk three to four hours in [an] eight-hour day.

Tr. 29.

At the fourth step of the disability analysis, the ALJ found Plaintiff was not able to perform any past relevant work. Tr. 35.

At the fifth step of the analysis, the ALJ found Plaintiff retained the capacity to perform the following occupations which exist in significant numbers in the national economy: assembler, optical goods; bonder or wire worker; ticket taker with sit/stand option; photocopy machine operator with sit/stand option; and light fixture industry with sit/stand option. Tr. 36.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act from the alleged onset date, September 17, 2010, through the date of the ALJ's decision, April 13, 2014. Tr. 36-37.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the

burden of developing the record, <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at step five of the disability analysis process. <u>Tackett</u>, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); <u>see also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews</u>, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at 1039-40.

Because Plaintiff is representing herself pro se, the court construes her pleadings liberally. <u>See</u> <u>Garmon v. City of Los Angeles</u>, 828 F.3d 837, 846 (9th Cir. 2016).

## **Discussion**

Plaintiff raises the following issues on appeal: whether the ALJ properly evaluated (1) Plaintiff's symptom allegations; (2) the testimony of several lay witnesses; and (3) medical opinions from Plaintiff's treating physicians; and whether the ALJ (4) made appropriate findings regarding work in the national economy at step five.

## I.    <u>Symptom Testimony</u>

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."[2] Pursuant to Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p, 1996 WL 374186 (July 2, 1996)), the ALJ is no longer tasked with making an overarching credibility determination, and must assess instead whether a claimant's subjective symptom statements are consistent with the record as a whole. The ALJ's decision in this case was issued well before SSR 16-3p became effective and there is an absence of binding precedent interpreting this new ruling or addressing whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retrospectively to a 2013 ALJ decision).

However, SSR 16-3p is a clarification of sub-regulatory policy, rather than a new policy. SSR 16–3p, at *1; also compare SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). In Andre v. Colvin, 6:14-cv-02009-JE (D. Or. Oct. 13, 2016), I recently concluded that, for this reason, retroactive application of the new SSR is appropriate. See Smolen v. Chater, 80 F.3d 1274, 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993)) (because regulations were intended to incorporate prior Social Security Administration policy, they should

---

[2] The Commissioner's assertion that the clear-and-convincing standard does not apply to the ALJ's credibility findings is foreclosed by the Ninth Circuit's holding in *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citations omitted). See Def.'s Br. 6 n.1.

be applied retroactively). The new SSR clarifies that "subjective symptom evaluation is not an examination of an individual's character." Id. In other words, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. Rather, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." Id. Thus, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" Id. at *9. Instead, the finding "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." Id.

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ summarized Plaintiff's symptoms allegations appropriately. Tr. 29. Plaintiff alleges that right knee pain limits her ability to kneel and use stairs, and can affect her ability to walk. See tr. 267-74. Plaintiff endorses right elbow pain and associated weakness and numbness,

and describes dropping items frequently as a result. Id. She also reports pain in her cervical and lumbar spine which impedes her mobility. Id. Other allegations include difficulty sleeping due to pain, inability to attend social gatherings, and being bed-bound or house-bound due to pain. Id. Specifically, Plaintiff indicated her limitations affect lifting, squatting, bending, reaching, walking, sitting, kneeling, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along with others. Tr. 272. Plaintiff has indicated she uses two walkers, one for at home, and another that she keeps in her car. Pl.'s Reply 3.[3]

Plaintiff alleges several errors regarding the ALJ's credibility determination, though most frequently the ALJ's finding that "[i]nstances of drug seeking behavior also exist." Tr. 30; see, e.g., Pl.'s Br. 4; Pl.'s Reply 2, 3. Plaintiff argues the ALJ's drug-seeking finding is "slanderous." The ALJ supported the finding by citing five different passages in the record. In July 2012, plaintiff's treating physician Jodi R. Ready, M.D. noted Plaintiff had "taken extra Vicodin this month," but had not taken extra alprazolam (Xanax). Tr. 444. However, Dr. Ready did not indicate that Plaintiff was drug-seeking, and continued to prescribe Vicodin and alprazolam. Tr. 445. Nearly a year later in May 2013, Dr. Ready noted that Plaintiff "doesn't know why she is short 6 alprazolam and 18 Vicodin" after going hiking and finding "the half mile round trip on a steep hill was too much." Tr. 551. Dr. Ready indicated she was "concerned that [Plaintiff] is out of these early but it is very unusual for her." Tr. 552. The doctor reduced the Vicodin dosage, but continued to prescribe it, and continued to "[e]ncourage [Plaintiff] to stay active but be smart about it." Id. Dr. Ready did not indicate Plaintiff was drug-seeking in May 2013. Id.

---

[3] "Pl.'s Reply" refers to the documents docketed as ECF 24 which Plaintiff submitted on Nov. 5, 2016 entitled "Final Argument Or Brief on behalf of plaintiff" [sic]. "Pl.'s Br." refers to ECF 16, submitted by Plaintiff on Feb. 19, 2016.

One month later, however, Plaintiff presented at Dr. Ready's office and apparently yelled at the staff because she was frustrated after being told she was calling too early for a prescription refill. Tr. 548. The doctor explained that Plaintiff had "gone fishing and horseback riding and [was] being a lot more active." Id. The doctor also noted Plaintiff had broken-up with her boyfriend, and reported being "emotionally out of control." Tr. 549. The doctor had Plaintiff sign a behavioral contract, and ordered a diagnostic test for purposes of pain medication monitoring. See tr. 550. As the ALJ noted, the test results were positive for benzodiazepine, though the import of the result is unclear because there is no dispute that Plaintiff was regularly prescribed alprazolam, a benzodiazepine. Records from Columbia Pain Management in 2013 note both opioid and benzodiazepine dependency, but again, there was no indication by the physicians involved that her dependency was due to "drug-seeking" or chronic misuse, at least at that time. Rather, Plaintiff's dependency appears to be a function of being prescribed powerful opioid medications for years under the care of her physicians. See tr. 568-76. Indeed, although David Russo, D.O. diagnosed dependencies in 2013, he did not indicate that Plaintiff was necessarily drug-seeking, or that her pain symptoms were not credible as a result. Id.

Although drug-seeking behavior can be a valid reason to impugn a claimant's credibility, the ALJ did not adequately do so here. Foremost, the ALJ failed to identify what testimony proffered by Plaintiff was impugned by her alleged drug-seeking. Under both SSR 16-3p and 96-7p, general findings as to credibility are insufficient. Rather. The ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Additionally, that a Plaintiff with years of legitimately-prescribed medication develops a dependency and twice runs out of medication prior to her prescribed treatment schedule, without more, does not rise to the demanding clear-

and-convincing legal standard. See Garrison v. Colvin, 775 F.3d 995, 1015 (9th Cir. 2014). The Commissioner's contrary argument fails: although the court in Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) ultimately upheld the ALJ's overall credibility determination, substantial evidence in Edlund supported the ALJ's finding that he had carried out a "ruse to obtain prescription drugs for trade," and the examining psychologist opined that it was probable Edlund's mental evaluation was distorted by "emotional and motivational factors as well as possible substance abuse[.]" Id. (internal quotations and parentheses omitted). Because the relevant evidence in the instant case does not rise to a comparable level, the "drug-seeking" finding made by the ALJ in the instant case is not clear and convincing, and therefore constitutes legal error.[4]

However, although the ALJ erred in making the drug-seeking finding, the ALJ provided other, valid reasons to accord diminished weight to Plaintiff's symptom allegations. For example, the ALJ noted significant deviations between Plaintiff's allegations of pain and the objective medical record. Indeed, although inconsistency with objective medical evidence cannot be the sole reason for discrediting a claimant's symptom allegations, it is a valid factor in concert with other valid factors. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009). For example, despite Plaintiff's allegation of severe knee pain which causes her difficulty when standing, occasionally causes the knee to give out, and affects, at least in part, her ability to lift, squat, walk, and kneel, a treating provider noted that only months after her knee surgery, Plaintiff was able "to do nearly a full squat" in April 2011. Tr. 59, 273, 331. Indeed, despite knee

---

[4] The Court notes that the administrative record includes several chart notes from July 2014 signed by Dr. Ready, which generally describe that Plaintiff broke her medication contract and eventually was refused further Vicodin refills. However, because the records post-date the date of the decision and therefore cannot be a basis upon which to affirm the ALJ's decision, the records do not resuscitate the ALJ's legally insufficient finding regarding drug-seeking behavior. See, e.g., tr. 883-85, 898-904, 921; see also Burrell, 775 F.3d at 1141.

pain complaints, the doctor that performed the arthroscopy reported she had a full range of motion ("ROM"), no effusion, and x-rays revealed well-preserved joint spaces, and no evidence of acute injury by November 2011. Tr. 333.

Similarly, the ALJ noted inconsistencies between Plaintiff's subjective elbow complaints and the medical record. Plaintiff alleged her right elbow causes numbness and makes her susceptible to dropping things – so much so that she claimed to be limited to lifting no more than a gallon of milk. Tr. 56, 272. However, as the ALJ pointed out, objective medical testing and examination of the right elbow revealed normal ROM and strength, and two examining physicians interpreted the EMG study of the elbow as normal. Tr. 30, 359, 475.

The ALJ also discredited Plaintiff's complaints based on evidence that her medications were effective in controlling pain complaints. Indeed, such evidence is a valid reason to discredit allegations of disabling pain. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are adequately controlled by medication are not disabling). The ALJ set forth a thorough review of the medical evidence, and pointed out a number of instances where Plaintiff reported improvement, her physical therapy was said to be helpful, and medical examinations of her knee and elbow were within normal limits. Tr. 30. Plaintiff does not contest the ALJ's findings as to the efficacy of her treatment, including the noted improvement of her right knee after arthroscopy in terms of pain and range of motion, or of the elbow in terms of range of motion, grip strength, and a normal EMG. Tr. 30.

The ALJ further noted that in November 2012, Dr. Ready reported that the medication Gabapentin "continues to be effective in her pain relief" for her generalized myofascial pain. Tr. 30, 506. In April and May 2012, Dr. Ready also noted that Plaintiff's Cymbalta medication was

working well and diminishing pain in conjunction with Vicodin and alprazolam, and although

Plaintiff still reported waking up with pain, she was "moving comfortably" on examination. Tr.

409, 522, 523, 524. The ALJ also noted that in May 2013, Plaintiff was "feeling better" after

stopping Neurontin. Tr. 551. At the appointment, Dr. Ready noted Plaintiff moved comfortably,

including her head and arms. Tr. 552. Plaintiff argues, without citing specific evidence, that her

medical conditions continue to decline. Pl.'s Reply 4. However, the ALJ's finding that plaintiff's

pain medications were reported to be effective is supported by substantial evidence in the record.

Accordingly, the court must uphold the ALJ's finding. Batson v. Comm'r of Soc. Sec. Admin.,

359 F.3d 1190, 1193 (9th Cir. 2004) (even where evidence is susceptible to more than one

rational interpretation, the ALJ's decision must be upheld by the court if it is supported by

substantial evidence).

 The ALJ further found that Plaintiff's symptom allegations were inconsistent with her

reported activities of daily living ("ADLs"). An ALJ may invoke ADLs to support an adverse

credibility finding in order to (1) illustrate contradiction in previous testimony, or (2) show that

the activities meet the threshold for transferable work skills. Orn v. Astrue, 495 F.3d 625, 639

(9th Cir. 2007). The ALJ identified several specific examples of ADLs that contradicted the

severity of Plaintiff's impairment allegations. Tr. 31. Plaintiff contests some of the ALJ's

findings; for example, Plaintiff asserts the ALJ erroneously found she was a member of a gym.

Pl.'s Reply 2, 4. However, the ALJ did not indicate Plaintiff was a gym member, but merely that

she "started an exercise program at the gym." Tr. 31. The record supports the ALJ's finding. Tr.

559 ("She has started an exercise program two weeks ago, Total Gym."). Plaintiff also contests

the ALJ's finding that she was riding horses and fishing in 2013. Pl.'s Br. 3; Pl.'s Reply 4.

Indeed, a chart note from June 2013 indicates Plaintiff "has gone fishing and horseback riding

and being a lot more active." Tr. 548. Plaintiff also disputes the ALJ's finding that "I moved heavy things into my [apartment]," but the record supports the ALJ's finding that Plaintiff reportedly moved apartments in May 2011, and made 25 trips up and down a flight of stairs, just months after her knee arthroscopy. Tr. 31, 332. Finally, Plaintiff asserts the ALJ incorrectly found she "walked long distances" every day. Pl.'s Reply 4. However, this overstates the ALJ's finding, as the ALJ merely noted that Plaintiff reported walking her dog each day, which is supported by the record. Tr. 31, 548. Moreover, the ALJ provided examples of other ADLs which contradicted Plaintiff's statements regarding the severity of her impairments which Plaintiff does not dispute, including working part-time, doing household chores and cooking, and going shopping. Tr. 31. The ALJ's findings are well-supported in the record, and therefore the court does not find reversible error.

On balance, the ALJ provided several reasons for discrediting allegations that Plaintiff's knee and elbow symptoms were as limiting as alleged. To the extent ALJ found Plaintiff's overall credibility was undermined by "drug-seeking behavior" prior to the date of the ALJ's the decision, the ALJ erred. However, the other rationales provided by the ALJ are clear and convincing, and supported by substantial evidence in the record. Accordingly, the ALJ's error as to drug-seeking behavior was harmless. Carmickle, 533 F.3d at 1162 ("[T]he relevant inquiry . . . is not whether the ALJ would have made a different decision absent any error . . . but it is whether the ALJ's decision remains legally valid, despite such error.").

II.     Medical Opinion Evidence

Plaintiff argues the ALJ erred in evaluating the medical evidence in regard to two treating physicians. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. Carmickle, 533 F.3d at 1164. The Ninth Circuit distinguishes

between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d at 830. A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADLs. Tommasetti v. Astrue, 533 F.3d at 1035, 1040 (9th Cir. 2008).

Plaintiff first assigns error to the evaluation of Christopher Van Tilburg, M.D., who treated Plaintiff for elbow pain stemming from a workplace injury in August 2009. Tr. 395. The doctor diagnosed elbow contusion with neurogenic pain, and noted preexisting fibromyalgia. Tr. 359. Dr. Van Tilburg ultimately determined Plaintiff's elbow contusion had resolved and her elbow neurogenic pain was medically stationary, and released her to full-time work duty in April 2010. Id. The doctor recorded full strength and range of motion in her elbow, and full grip strength without sensory deficit. Tr. 358. The ALJ summarized Dr. Van Tilburg's chart notes, and indicated that his opinion, along with those of Vitray Blair, M.D. and Charles Petit, M.D., was consistent with the RFC. Tr. 34. Plaintiff argues that because Dr. Van Tilburg was treating her in the context of a workers' compensation claim, he did so with the interests of Walmart Corporation, rather than Plaintiff, in mind.

While the court must construe Plaintiff's pro se arguments liberally, she has not identified any colorable error in the ALJ's assessment of Dr. Van Tilburg's opinion. As a threshold matter, the ALJ is not required to comment extensively on every medical opinion. Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) (citing Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)). Here, the ALJ did not expressly state how much weight he accorded the doctor's opinion, other than to note the opinions of Drs. Blair, Petit, and Van Tilburg were consistent with the RFC. Tr. 34. Nonetheless, although Dr. Van Tilburg opined in April 2010 that Plaintiff could perform full-duty work, the ALJ ultimately assessed a somewhat more limited residual work capacity. Tr. 29, 359. Thus, Plaintiff's assertion that the ALJ was overly reliant on Dr. Van Tilburg's opinion is undermined by the fact that the ALJ's assessment of Plaintiff was *more* restrictive than Dr. Van Tilburg opined. Accordingly, any error was harmless. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (ALJ's decision will not be reversed for errors that are harmless).

For the same reason, Plaintiff's second point of contention with respect to Dr. Van Tilburg – that he was allegedly employed by Walmart – is also unavailing. Had the ALJ fully adopted Dr. Van Tilburg's opinion and fashioned an RFC based on full-duty work without lifting or carrying restrictions, the Plaintiff would potentially have a valid argument that the ALJ accorded too much weight to the opinion. However, because the ALJ determined Plaintiff retained only the capacity for light-duty work with additional lifting and sit/stand restrictions, Dr. Van Tilburg's assessment ultimately had little impact on the Commissioner's non-disability determination.

Plaintiff also assigns error to the ALJ's evaluation of the opinions of treating physician Dr. Ready. Dr. Ready's opinions were contradicted by the reviewing physicians of record who

assigned far fewer work-related limitations. As a threshold matter, it is somewhat unclear what Plaintiff's allegations pertain to, as she notes the ALJ erred by "[g]iving little weight to the pertinent medical records" that "clearly stated and proved on one summary alone over thirteen disabling conditions." Pl.'s Br. 3. It appears the Plaintiff is referring to opinions of Dr. Ready cited by the ALJ. See tr. 33-34, 343, 459, 619-22. The first of Dr. Ready's records cited by the ALJ is an attorney-generated worksheet completed by the doctor in December 2013. Tr. 619-22. The worksheet asserts Plaintiff was diagnosed with major joint dysfunction, degenerative disc disease, peripheral neuropathy, osteoporosis, affective disorders, anxiety, migraines, and spinal stenosis. Tr. 619. Plaintiff argues that she should be awarded benefits because "[a]t the time of the Hearing it only took seven conditions of the spine to qualify for benefits." Pl.'s Br. 3. This argument misstates the law: the *number* of conditions a claimant has does not direct the ultimate disability decision. Rather, the key inquiry is the *severity* of an impairment (or combination of impairments) in terms of how it affects a claimant's ability to perform regular work on a sustained basis. 20 C.F.R. §§ 404.1520(a), 416.920(a).

On the following page, Dr. Ready completed a check-box question indicating Plaintiff has spinal stenosis, osteoarthritis, and degenerative disc disease with evidence of root compression, such that although she does not *meet* Listing § 1.04A for Disorders of the Spine, she nonetheless *equals* the listing. See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is medically equivalent to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."). However, as the ALJ explained, Dr. Ready did not provide or make reference to any relevant objective findings, as the listing requires. Instead, the

doctor reiterated subjective symptoms: "diffuse pain, has to limit her daily efforts in ADLs due to pain, weakness – drops things, occasional falls." Tr. 620. As the ALJ noted, the medical imaging of record does not show compromise of the nerve root in Plaintiff's cervical spine. Tr. 28, 590; see 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.04, 1.04A.[5] Moreover, absent objective medical findings in support of Dr. Ready's opinion, it is conclusory. Indeed, an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray, 554 F.3d at 1228.

Additionally, the ALJ found Dr. Ready's report was presumably based on Plaintiff's subjective symptom complaints because the doctor did not reference any examination findings. Tr. 34; Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (ALJ may reject treating physician's opinion that is predominantly premised on claimant's subjective complaints).[6] Furthermore, Dr. Ready's findings were contradicted by substantial evidence; for example, although Plaintiff testified that she was able to lift a gallon of milk, Dr. Ready indicated she cannot lift or carry any weight, even occasionally, during the workday. Tr. 620. Similarly, as discussed above, the record

---

[5] Plaintiff asserts that she has a "compressed nerve existing C-4 C-5 region," with references to exhibits that do not exist on this record. Pl.'s Reply 2. Plaintiff asserts that a compressed nerve is a qualifying condition in itself, but this is not the case. Listing § 1.04A requires not only the findings listed in § 1.04A, but also "compromise of the nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Regardless, the listing can only be met or equaled by establishing, *by clinical findings*, *all* of the factors listed in §§ 1.04 and 1.04A. Thus, Plaintiff's argument is unavailing. The burden of proof rests on the Plaintiff to establish she meets a listing at step three of the sequential evaluation process; Plaintiff has not provided sufficient evidence to do so here.

[6] The ALJ's finding is corroborated by a December 9, 2013 chart note in which Dr. Ready indicates: "[Plaintiff] is here today to help me fill out her functional assessment for disability today. We went through the questions one by one with her informing me of her functional level." Tr. 761.

reflects that Plaintiff expressed that she is able to care for her dog, hike, ride horses, and fish, all of which contradict the severe limitations set forth by Dr. Ready.[7]

Finally, Dr. Ready indicated Plaintiff had been disabled since 2005 in a "Verification of Handicapped/Disability Status" she signed in May 2011. However, Dr. Ready did not begin treating Plaintiff until 2009, and further, Plaintiff performed substantial gainful activity well after 2005. Tr. 343. As such, Dr. Ready's "Handicapped/Disability Status" opinion is conclusory, devoid of clinical findings, and inconsistent with Plaintiff's work and ADLs. As the ALJ explained, the program requirements for "Handicapped/Disability Status" are not the same as those in for Social Security benefits. Tr. 34. Accordingly, for all the reasons discussed above, the ALJ did not err in rejecting Dr. Ready's medical opinions.

III.    Lay Witness Testimony

Plaintiff assigns error to the ALJ's evaluation of written lay statements submitted by various friends and family, which the ALJ accorded "[s]ome weight." Tr. 32. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a

---

[7] Attached as Exhibit C to Pl.'s Reply is a one-page "Permanent Disability Verification" dated November 1, 2016. The form appears to have been generated by Mid-Columbia Community Action Council, Inc., and signed by Brittany Fallen, who purports to be a "physician/psychologist" although she lists no credentials. The letter is not part of the administrative record, nor was it reviewed by the ALJ. Although in some cases, new, material evidence may warrant a remand, several requirements must be met. Critically, new evidence must bear "directly and substantially on the matter in dispute." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). Second, the new evidence must "demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome" of the decision. Id. Even assuming without finding that the letter from Ms. Fallon bears directly on the matter at hand, there is no indication that the outcome of this case would be changed. The letter is simply a conclusory statement that Plaintiff is "permanently disabled." There are no objective (or subjective) findings cited in support of the assertion, which renders the opinion of little probative value in the SSA context. Moreover, there is no indication as to Ms. Fallon's level of expertise, nor is there any indication as to Ms. Fallon's treatment relationship with Plaintiff. Finally, it is not clear whether Ms. Fallon's opinion is relevant to the time period at issue in this case, as the letter was signed years later. For all these reasons, there is no reasonable possibility the conclusory letter by Ms. Fallon would change the outcome of this case.

claimant's ability to work is competent evidence that an ALJ must take into account. <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993)). In order to reject such testimony, the ALJ must provide "reasons germane to each witness." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001). "Further, the reasons 'germane to each witness' must be specific." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1116 (9th Cir. 2009) (citation omitted). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony may be harmless error. <u>Molina</u>, 674 F.3d at 1122.

Plaintiff argues that the ALJ assigned "to[o] much weight" to opinions of witnesses who had not known her for very long, and to a neighbor who "really didn't know me completely." Pl.'s Br. 2. It is unclear which of the lay witness statements Plaintiff is referring to, and further, what specific testimony Plaintiff argues is not accurate. <u>Id.</u> Given the posture of this case, general assignments of error that are not specific to a lay witness or a specific allegation are insufficient to reverse the ALJ's decision, as the court's standard of review is "highly deferential" to the ALJ. <u>Valentine v. Comm'r, Soc. Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009). Moreover, even where an ALJ's errs, Plaintiff must establish the error is harmful. <u>McLeod v. Astrue</u>, 640 F.3d 881, 887 (9th Cir. 2011).

The ALJ accorded "some weight" to the assessments in general, and indeed limited the weight accorded, in part, because "some parties did not regularly see the claimant, suggesting that they may not be entirely familiar with the claimant's routine activities." Tr. 32. Thus, although Plaintiff faults the ALJ for according lay witnesses who did not know her well too much weight, her argument is unpersuasive given that the ALJ expressly limited the weight

accorded to those who had not known her as long. Id. Plaintiff's assertion that the ALJ failed to consider that Plaintiff turns down invitations to celebrate holiday events with her family is also unsupported in the record; in fact, the ALJ noted that Plaintiff's father only sees her a few times each year, that she only communicated with her mother occasionally via the computer. Tr. 32. As such, Plaintiff's assertions are not supported by the record, but even if Plaintiff's arguments were taken as true, she has not shown that the Commissioner's ultimate disability decision would have been impacted had the ALJ evaluated the lay witness statements in the manner Plaintiff wishes. Molina, 674 F.3d at 1123 (non-disability decision will not be reversed for errors that are inconsequential to the disability determination).

IV.    Step Five Assignment of Error

At step five of the sequential evaluation process, the ALJ may rely upon the testimony of a VE to determine whether a claimant retains the ability to perform past work at step four, or other work in the national economy at step five. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). However, the ALJ is required to include only those limitations which are supported by substantial evidence in the RFC and any hypothetical questions posed to the VE. Osenbrock, 240 F.3d at 1163-65.

In her Reply, Plaintiff argues for the first time that the ALJ improperly found Plaintiff could perform "light sedentary work." Pl.'s Reply 3. Plaintiff argues that she cannot perform any of the jobs identified by the ALJ at step five, in large part because she needs to "lay down quite frequently because of spinal and nerve pain, [s]itting for long periods is simply not-doable. My pain elevates to 12 on a scale of 1-10." Pl.'s Reply 7. Accordingly, Plaintiff indicates that she cannot perform the occupation of ticket-taker because it requires standing. See Pl.'s Reply 10-11. Plaintiff explains that since she allegedly uses a cane or a walker, she would be unable to assist

customers using wheelchairs as a ticket-taker. Pl.'s Reply 11. However, even Dr. Ready's assessment – which Plaintiff alleges was erroneously rejected – indicated Plaintiff retained the capacity to stand or walk for up to 90 minutes at a time, *without* an assistive device. Tr. 620. Further, in a December 2013 chart note, Dr. Ready explained that "Arleta is not completely forthcoming about everything she does . . . I have signed the [SSA disability] paperwork but have some reservations about whether I am getting the whole story from her." Tr. 763. Review of newer entries to the administrative record reveal Dr. Ready eventually provided a cane to Plaintiff in May 2014, despite noting that Plaintiff had last fallen down two years prior, and mentioning that Plaintiff "moves her head more than most people I know, is able to bend down from a sitting position and pick things up off the floor . . . [and] is able to move all extremities in full range which is directly observed." Tr. 855. Two months later, Dr. Ready similarly reported that Plaintiff "moved quickly down the hall . . . barely touching down her cane . . . ." Tr. 921. Dr. Ready also indicated that "[i]t should be noted that [Plaintiff] never needed the cane until she asked for the prescription for it which I gave her under the pretense that she was worried that she would fall at her son's wedding." Id. Accordingly, the medical evidence does not establish that Plaintiff requires a cane in order to stand or walk; or, for that matter, that Plaintiff is any more impaired than the ALJ found in the RFC.

Finally, Plaintiff argues that SSR 83-46C, 1983 WL 31275 (1983) directs a different outcome. Specifically, Plaintiff notes that "the case was turned around and went in Favor of the Plaintiff," and "the SSA bear the burden of proof." Pl.'s Reply 4. However, SSR 83-46C involves a case where the Supreme Court found that the Commissioner may rely upon the Medical-Vocational Guidelines in making a non-disability finding. Id. The case discussed in SSR 83-46C is not relevant to the instant case because here, the Medical-Vocational Guidelines were

not used since Plaintiff was found to retain the capacity to perform less than the full range of light work. Tr. 36. Accordingly, the ALJ properly consulted a VE to determine whether Plaintiff could perform other work in the national economy. Tr. 65-68. Insofar as Plaintiff asserts the Commissioner carries the burden of proof at step five, the assertion is correct; however, the court finds that the burden was properly carried, as the VE adequately identified several jobs Plaintiff could perform within the limitations of her RFC. Tr. 36, 65-68. As previously noted, the court finds no reversible error regarding the medical and testimonial evidence the ALJ utilized in formulating the RFC. Although Plaintiff has a different interpretation of the evidence, this court must defer to the rational interpretations of the ALJ. Batson, 359 F.3d at 1193 (variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record).

## Conclusion

For the reasons discussed above, the Commissioner's final decision is based on substantial evidence and free from harmful legal error.[8] Accordingly, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 22nd day of May, 2017.


 /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

---

[8] Plaintiff also argues that her income level was so low as to somehow trigger benefits, and that she is somehow entitled to a monetary remedy in this matter for a "mishandled" case. The court liberally construes these arguments as regarding the value of benefits that would be awarded if the court found this case warranted a remand for payment. However, because the court affirms the Commissioner's decision of non-disability, Plaintiff's arguments are inapposite.